**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:13-cv-04160-NKL |
| | ) | |
| COMMERCE BANCSHARES, INC. | ) | |
| and COMMERCE BANK, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendants Commerce Bancshares, Inc. and Commerce Bank (together, "Commerce") move for an order awarding Commerce attorney fees and non-taxable costs pursuant to 35 U.S.C. § 285. Commerce also has submitted a bill of costs to which plaintiff Intellectual Ventures II LLC ("IV") objects in part. For the reasons set forth below, the Court denies the motion for attorney fees but awards to Commerce most of the requested costs.

## I.  BACKGROUND

IV is managed by Intellectual Ventures Management, LLC ("Intellectual Ventures"), which is "deeply involved in the business of invention." Intellectual Ventures files patents for its own inventions, collaborates with others to develop and patent inventions, and acquires and licenses patents from inventors. As of June 2013, Intellectual Ventures had earned more than $3 billion by licensing its patents to third parties.

Since 2009, Intellectual Ventures, IV, and related companies have filed more than 80 patent lawsuits. In 2013, IV began to sue dozens of banks, alleging infringement of the patents at issue in this case.

On June 19, 2013, IV sent Commerce a letter accusing it of infringement. IV invited Commerce to compensate IV and advised that IV would file suit for patent infringement. IV had not previously contacted Commerce to discuss the purported infringement. The next day, June 20, 2013, IV filed this action, alleging that defendant Commerce was infringing one or more claims of five patents that IV owns.[1] IV alleged that Commerce infringed multiple claims of United States Patent No. 5,745,574 (the "'574 Patent") through its compliance with the Payment Card Industry ("PCI") Data Security Standard for encrypting data during communication sessions. IV alleged that Commerce infringed at least one claim of United States Patent No. 6,826,694 (the "'694 Patent") and at least one claim of United States Patent No. 6,715,084 (the "'084 Patent") through "its Security Practices." IV alleged that Commerce infringed at least one claim of United States Patent No. 6,314,409 (the "'409 Patent") through its ROAMPay Mobile Payment product or services that use PCI Data Security Standard technology to protect customer information and account data. IV alleged that Commerce infringed at least one claim of United States Patent No. 7,634,666 (the "'666 Patent") through use of the IBM System z10 Business Class Server.

On September 4, 2013, Commerce advised IV that Commerce has not used and does not use the crypto card of the IBM System z10 mainframe computer, which IV had accused of infringing the '666 Patent. Following court-supervised mediation efforts in November 2013, IV asked Commerce for a declaration substantiating the claim that the zSeries mainframes do not use the crypto card. On November 22, 2013, Commerce's counsel supplied the requested declarations. On November 25, 2013, IV served infringement contentions that did not include any allegations with respect to the '666 Patent. In May 12, 2014, after negotiations over a joint

---

[1] Each of these patents was duly issued by the United States Patent and Trademark Office (the "PTO") between 1998 and 2009.

stipulation and a covenant not to sue that Commerce requested, the parties signed a covenant not to sue and filed a stipulation of dismissal of the claims respecting the '666 Patent.

Pursuant to the Court's Scheduling Order, the infringement contentions that IV filed were supposed to contain, *inter alia*, a "specific identification of each accused apparatus, product, device, process, method, act or other instrumentality of which IV is aware" for each asserted claim, and a "chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality . . . ." IV's preliminary contentions exceeded 400 pages.

On March 28, 2014, the parties filed a Joint Prehearing Statement and Claim Construction Chart that set forth constructions proposed by the parties—both those upon which they agreed and those with respect to which they disagreed. Each party cited intrinsic and extrinsic evidence that purportedly supported the constructions for which they advocated. On April 23, 2014, the parties filed a Revised Joint Prehearing Statement and Claim Construction Chart.

On April 25, 2014, Commerce moved to stay this action because the patents at issue were at that time the subjects of *Inter Partes* Review ("IPR") petitions filed with the PTO to invalidate the patents. In its motion, Commerce explained that IPR "is an expedited procedure . . . that determines the validity of a patent within 18 months of the date of the petition." Commerce also stated, "Despite being filed nearly 11 months ago, this case remains in its infancy. Very little discovery has been conducted, no depositions have been taken, and no substantive motions have been filed."

On April 28, 2014, the parties filed opening claim construction briefs with the Court. On May 19, 2014, the parties filed responsive claim construction briefs with the Court.

On June 4, 2014, the Court granted Commerce's motion to stay this action pending IPR and further ordered that the case be dismissed without prejudice, subject to being reopened upon the completion of the IPR process.

As a result of the IPR petitions and challenges in the United States District Court for the Southern District of New York to the patents at issue, every asserted claim of the patents that were at issue has been found unpatentable or invalid under 35 U.S.C. §§ 101, 102, and/or 103. *See Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-cv-03777 (AKH), 2015 U.S. Dist. LEXIS 56092 (S.D.N.Y. Apr. 28, 2015); (2) IPR2014-00786; (3) IPR2014-00682; (4) IPR2014-00801; and (5) CBM2014-00157. IV appealed the PTAB's findings of unpatentability relating to the '694 and '084 patents, but the Federal Circuit affirmed the PTAB decisions. *Intellectual Ventures II LLC v. Compass Bank*, No. 16-1416, 671 Fed. App'x 788, 788 (Fed. Cir. 2016); *Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, No. 2016-1519, 682 Fed. Appx. 891, 895 (Fed. Cir. 2017). The judgment of the Southern District of New York became final only on July 12, 2017, and IV's time to appeal that court's decision therefore has not yet elapsed.

On May 31, 2017, Commerce moved the Court to reopen the case and enter final judgment in favor of Commerce on each of the remaining claims. The Court then entered final judgment in favor of Commerce as to the patents that had been in dispute.

Commerce thereafter filed the instant motion seeking attorneys' fees and filed a bill of costs. IV opposes the motion for fees and objects to certain costs.

## II.   MOTION FOR ATTORNEY FEES

### a.   Standard

Section 285 of the Patent Act permits the Court, in "exceptional cases," to "award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The United State Supreme Court has held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

The purpose of a fee award under Section 285 is to prevent "'gross injustice,'" and an award of attorney fees "should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees."  *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) (quoting S. Rep. No. 1503, 79th Cong., 2d Sess. (1946)); *see also Octane Fitness*, 134 S.Ct. at 1753 ("The provision enabled [district courts] to address 'unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force,' which made a case so unusual as to warrant fee-shifting.") (citation omitted).  Thus, although the Supreme Court's decision in *Octane* lowered the standard for fee-shifting in patent cases, even in its wake, courts generally award fees pursuant to Section 285 only in cases involving "egregious behavior." *Gametek LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (citing *Intellect Wireless, Inc. v. Sharp Corp.*, No. 10–6763, 2014 WL 2443871, at *6 (N.D. Ill. May 30, 2014) (awarding fees because of false declarations before the PTO); *Cognex Corp. v. Microscan Sys., Inc.*, No. 13–2027, 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) (criticizing plaintiff for attempting to re-litigate issues previously decided and awarding fees as

to duplicative motions); *Precision Links Inc. v. USA Products Group, Inc.*, No. 08–576, 2014 WL 2861759, at *3 (W.D.N.C. June 24, 2014) (criticizing plaintiff for seeking preliminary injunction on the basis of an already-rejected theory of liability and for filing frivolous post-dismissal motions)); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1319–20 (Fed. Cir. 2013) (affirming district court award of fees that cited, *inter alia*, plaintiff's filing of "repetitive motions" and "witness tampering"). Moreover, "for a case dismissed before trial to be designated exceptional, evidence of the frivolity of the claims must be reasonably clear without requiring a 'mini-trial' on the merits for attorneys' fees purposes." *Trover Grp., Inc. v. Dedicated Micros USA*, No. 13-1047, 2015 WL 4910875, at *3 (E.D. Tex. Aug. 17, 2015) (quotation marks and citations omitted); *see also TainoApp, Inc. v. Amazon.com Inc.*, No. 15-00101, 2015 WL 13404107, at *3 (N.D. Cal. Sept. 22, 2015) ("[T]he Court . . . has not had the benefit of an in depth analysis of the arguments, especially on issues of non-infringement. On this record, even if [plaintiff]'s claim construction arguments are weak, the Court cannot say that they are objectively unreasonable.").

The Court must consider "the totality of the circumstances" and exercise "equitable discretion" in determining whether a case is "exceptional." *Octane*, 134 S. Ct. at 1758. "This is 'a simple discretionary inquiry; it imposes no specific evidentiary burden, much less . . . a high one." *University of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317, 1322 (Fed. Cir. 2017) (quoting *Octane*, 134 S. Ct. at 1758); *see also Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 629 F. App'x 972, 976 (Fed. Cir. 2015) ("In determining the amount of reasonable attorneys' fees to award under federal fee-shifting statutes, the district court is afforded considerable discretion.") (quotation marks and citation omitted).

### b. **Discussion**

There is "no precise rule or formula" for determining whether a case is exceptional. *University of Utah*, 851 F.3d at 1322 (quoting *Octane*, 134 S.Ct. at 1756). "A case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *University of Utah*, 851 F.3d at 1322 (quoting *Octane*, 134 S.Ct. at 1757). Among the factors courts consider in determining whether a case is exceptional are: "failure to conduct an adequate pre-suit investigation, vexatious or unduly burdensome litigation tactics, misconduct in procuring the patent, or an oppressive purpose . . . ." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1311 (Fed. Cir. 2013).

A movant must establish entitlement to fees "by a preponderance of the evidence . . . ." *Octane*, 134 S. Ct. at 1756.

### i. **Whether IV's Purpose Was Improper**

The Court may examine IV's motivation in bringing and continuing litigation in determining whether this case is exceptional.

Commerce accuses IV of using infringement lawsuits to "monetize[e]" the patents it owns, suggesting that the fact that IV has initiated more than 80 patent lawsuits since 2009 is indicative of an improper pattern of "extract[ing]" money through litigation. But "the patent law provides the statutory right to exclude those that infringe a patented invention." *Checkpoint*, 858 F.3d at 1375. The exercise of that right, even in an aggressive fashion, does not by itself render litigation exceptional. *See id.* (criticizing district court analysis that "cited [plaintiff's] lawsuits against other asserted infringers, its market share, and its acquisition of competing producers" in finding an improper motive and noting that "[a] patentee's assertion of reasonable claims of infringement is the mechanism whereby patent systems provide an innovation incentive"); *see*

*also Gametek*, 2014 WL 4351414, at *3 (holding that an "aggressive litigation strategy" alone does not warrant fee-shifting). Indeed, there is a "presumption that an assertion of infringement of a duly granted patent is made in good faith." *Checkpoint*, 858 F.3d at 1375-76 (quoting *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010). Nonetheless, courts award attorney fees in cases in which plaintiffs with frivolous claims "use patents as a sword to go after defendants for money . . . ." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1930 (2015).

Here, Commerce does not suggest that IV intended to harass Commerce into settling this case. *Cf. SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) (finding that "a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims" was relevant to determining whether the case was exceptional). The mere fact that IV monetizes its patents through licensing does not mean that its filing of the instant action was inappropriate. *See DietGoal Innovations, LLC v. Wegmans Food Markets, Inc.*, 126 F. Supp. 3d 680, 686 (E.D. Va. 2015) ("[I]f a party can reasonably hope for success on the merits of its claim, it does not matter whether that party is a non-practicing entity, whether it sues numerous defendants, or whether it settles its claims for relatively small sums.") (quotation marks and citation omitted).

Thus, Commerce fails to show that IV had any improper purpose that would weigh in favor of fee-shifting.

### ii. <u>Failure to Conduct Adequate Pre-Suit Investigation</u>

Each party has an obligation to investigate its claims before filing suit in federal court. *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry

reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").  In patent cases, Rule 11 requires "that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement."  *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300–01 (Fed. Cir. 2004).

Commerce argues that IV failed to conduct an adequate pre-suit investigation, citing IV's failure to try to resolve the dispute before instituting litigation, IV's failure to identify at the outset of the litigation the Commerce products or systems that purportedly infringed IV's patents, and the fact that Commerce in fact did not even use certain products that were the basis for some of IV's claims.

IV does not adequately respond to the assertion that it failed to conduct an adequate pre-suit investigation.  IV mentions, in arguing that the positions it took were reasonable, that its infringement allegations were supported by publicly available information.  However, IV fails to state that it investigated its claims in any fashion *before* filing suit.  Both the attorney declaration and the two expert affidavits that IV filed in opposition to Commerce's motion for fees are silent on the subject of pre-suit efforts.  IV also does not deny that it never attempted to contact Commerce before filing suit to confirm whether Commerce was using the accused devices or systems.  These factors suggest that IV failed in some aspects of its pre-filing investigation.  *See Highmark, Inc. v. Allcare Health Mgmt. Sys.*, Inc., 706 F. Supp. 2d 713, 722 (N.D. Tex. 2010), as amended, (Apr. 1, 2010), *vacated in part on other grounds*, 2010 WL 3156005 (N.D. Tex. Aug. 9, 2010), *aff'd in part, rev'd in part on other grounds*, 687 F.3d 1300, 103 U.S.P.Q.2d  (Fed. Cir. 2012), *denying en banc reh'g*, 701 F.3d 1351, 105  U.S.P.Q.2d 1049 (Fed. Cir. 2012) ("The

almost complete lack of detail in [counsel]'s declaration regarding pre-filing investigation efforts, coupled with [the client]'s failure to produce any documentary evidence of such efforts . . . leave the Court with the firm conviction that [counsel] performed either no pre-filing investigation at all, or one that was inadequate."); *Calloway v. Marvel Entm't Grp., A Div. of Cadence Indus. Corp.*, 854 F.2d 1452, 1471 (2d Cir. 1988), *rev'd on other grounds, Pavelic & LeFlore v. Marvel Entm't Group, Div. of Cadence Indus. Corp.*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) ("LeFlore never submitted an affidavit to the district court describing a pre-filing inquiry. That fact alone strongly suggests that no inquiry was made."); *Enpat, Inc. v. Microsoft Corp.*, 26 F. Supp. 2d 811, 813 (E.D. Va. 1998) ("In response, plaintiffs have presented no evidence that Enpat, its counsel, or its expert performed any prefiling investigation of these products. On the basis of this evidence, the Court finds that plaintiffs failed to conduct a reasonable pre-filing investigation upon which to allege infringement against these products.").

However, even if the Court were to determine that there was not an adequate pre-suit investigation, Commerce has not cited—and the Court is not aware of—any decision awarding attorney fees solely on the basis of a failure to conduct an adequate pre-filing investigation. The cases that Commerce cites merely consider the lack of an adequate pre-filing investigation as one among multiple factors warranting finding a case exceptional. *See Taurus*, 726 F.3d at 1319 (observing that plaintiff had "prolonged the litigation in bad faith" and litigated the patent suit "vexatiously"); *Bayer CropScience AG v. Dow AgroSciences L*LC, No. 12-256, 2015 U.S. Dist. LEXIS 5880, at **15-16 (D. Del. Jan. 5, 2015) (finding that the case was meritless); *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 13-159 CW, 2014 U.S. Dist. LEXIS 129717, at *14 (N.D. Cal. Sep. 15, 2014) (same); *Chalumeau Power Sys. LLC v. Alcatel-Lucent Holding Inc.*, No. 11-1175, 2014 U.S. Dist. LEXIS 127645, at *9 (D. Del. Sept. 12, 2014) (finding that

plaintiff put "meager effort" into all aspects of the suit); *M-I Drilling Fluids UK Ltd. V. Dynamic Air Inc.*, No. 14–4857, 2017 WL 1193992, at *8 (D. Minn. Mar. 30, 2017) (finding that claims were "baseless"); *Yufa v. TSI Inc.*, No. 09-01315, 2014 U.S. Dist. LEXIS 113148, at **7-8 (N.D. Cal. Aug. 14, 2014) (noting that adequacy of pre-filing investigation is but "[o]ne consideration" that "weighs in favor of finding that this case is exceptional" and "[a]nother consideration is whether Plaintiff should have known that his case was meritless").

As discussed further below, the Court does not find IV's claims to have been insufficiently particular or objectively baseless, and the failure to conduct some aspects of a pre-suit investigation alone does not warrant an award of attorney fees under Section 285. *See Ulead Sys. Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1150 (Fed. Cir. 2003) (vacating a district court's award of attorney fees under Section 285 for failure to conduct pre-filing investigation where defendant agreed that Rule 11 sanctions were not appropriate and "declin[ing] to impose a special, pre-filing investigation requirement independent of Rule 11").

### iii.  Failure to Identify Infringing Products or Services

Commerce argues that IV's failure to identify, either in the complaint or in the preliminary infringement contentions, the particular Commerce products or systems that purportedly infringed IV's patents weighs in favor of finding this case exceptional.  According to Commerce, "[i]nstead of identifying specific infringing products or processes, IV . . . cited to industry standards employed by Commerce (e.g., PCI-DSS, NACHA) and merely speculated as to Commerce's activities."  Furthermore, "[w]here IV did identify specific products, it identified products that Commerce did not use."

In response, IV insists that the infringement contentions were "detailed" and showed, based on publicly available information and "Commerce's own documents," that Commerce

used systems and/or specifically identified products that infringed the patents. Specifically, IV alleged that Commerce used the IBM System z10 Business Class Server to infringe the '666 Patent. Commerce subsequently confirmed that it used the IBM System z10 mainframe computer, although it did not use the crypto card, the allegedly infringing component of the IBM System z10. IV specified that Commerce used the ROAMPay Mobile Payment system to implement aspects of the PCI Data Security Standard that infringed the '409 Patent, as shown in Commerce's literature. IV accused Commerce of using Netscreen's network security solutions and intrusion detection and prevention systems to secure its network through the method of electronic packet filtering claimed by the '694 Patent. IV contended that Commerce implemented firewall and intrusion detection systems that employed technology set forth in Section 11.4 of the PCI-DSS security standard that infringed the '084 Patent. Finally, IV accused Commerce of using one or more RSA products, including a SecurID system for managing network access, that secures communications using a public key infrastructure and public key certificates that infringed the '574 Patent.

The Court finds that, under the circumstances, IV's contentions were sufficiently particular. IV's infringement claims concerned systems that were not publicly available for inspection. At the outset, therefore, the contentions necessarily were limited. This alone does not make this case exceptional. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, No. 13-0740, 2015 WL 7283108, at *5 (E.D. Va. Nov. 17, 2015) ("IV had limited visibility into the details of certain of [the bank]'s processes, systems and methods that, at least from its website and those of other financial institutions, had some facial relationship to those covered by the asserted patents."); *E2E Processing, Inc. v. Caxbela's Inc.*, No. 14-36, 2016 WL 6217177, at *2 (E.D. Tex. Oct. 25, 2016), *appeal dismissed sub nom. E2E Processing, Inc. v. Cabela's Inc.*

(Nov. 28, 2016) (noting that a publication showed that defendant had purchased the accused software products and therefore plaintiff was not "unreasonable" in believing that defendant used those products). The fact that IV had not mustered additional information to provide more detail in the contentions, too, is of little consequence. When Commerce moved to stay this action in April 2014, it represented to the Court that this case was "in its infancy," and "[v]ery little discovery has been conducted." Having recognized that limited information had been exchanged, Commerce cannot now be heard to complain that IV's position before the Court was not properly fleshed out.

Furthermore, it was not unreasonable for IV to cite Commerce's compliance with industry standards as the basis for its infringement contentions. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) ("[A] district court may rely on an industry standard in analyzing infringement. If a district court construes the claims and finds that the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement. . . . [I]f an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product. . . . An accused infringer is free to either prove that the claims do not cover all implementations of the standard or to prove that it does not practice the standard."). IV's failure to specify that the claims at issue covered every system or device practicing the relevant standards, or that the accused Commerce systems and products necessarily operated in accordance with the relevant standards, does not render this case extraordinary given the "infancy" of the litigation before the Court.

Moreover, had Commerce believed that IV's allegations of infringement were not sufficiently particular, it could have raised that concern with the Court in response to the

complaint. Commerce's failure to move to dismiss on the ground that the allegations were not adequately particular, and its failure to raise any related defense in its answer, belie its claim that the infringement contentions were not sufficiently specific. *See E2E Processing*, 2016 WL 6217177, at *3 (rejecting argument that plaintiff "did not identify certain claim elements with enough specificity" and noting that "if Cabela's had a legitimate concern regarding the sufficiency of identification . . . then they could have raised that concern with the Court").[2]

### iv. IV's Accusations Regarding Products and Services Commerce Did Not Use

Commerce argues that the fact that Commerce did not use many of the accused services or products that IV accused of infringement demonstrates that IV's positions with respect to the patents were objectively baseless. Commerce cites the facts that Commerce did not use any of the crypto card component of the IBM System z10, RSA Keon PKI Solutions, or Trustwave Managed IDS Services.

However, when Commerce provided sworn statements that it did not use the crypto card component of the IBM System z10, which IV had accused of infringing the '666 Patent, IV promptly discontinued prosecution of claims concerning that patent and then negotiated with Commerce an agreement to formally dismiss claims regarding that patent. IV's refraining from pursuing claims relating to the '666 Patent upon learning that Commerce did not use the accused technology shows that it was approaching this litigation in a reasonable manner, and in good faith.

---

[2] Even if IV failed to include sufficient information in its contentions, that would "not make this case 'stand out' from the general body of cases where similar conduct occurs far too frequently." *Bovino v. Levenger Co.*, No. 14-00122, 2016 WL 1597501, at *6 (D. Colo. Apr. 21, 2016) (quotation marks omitted).

With respect to the accusations concerning RSA Keon PKI Solutions and TrustWave Managed IDS Services, IV maintains that Commerce used other RSA and Trustwave products or services that infringed the patents in question, and that Commerce's refusal to provide sufficient discovery is to blame for any failure by IV to identify the correct RSA or Trustwave products. Commerce's carefully crafted statements concerning the RSA and Trustwave products indicate that it was using other RSA and Trustwave products or services, as IV suspected. Under the circumstances, IV's contentions were not unreasonable.

### v. Were IV's Positions Objectively Baseless?

Commerce argues that IV's legal positions were objectively baseless because IV should have known that each of the patents at issue was invalid.

### 1. The Invalidity of All of the Patents

Commerce cites as evidence that this case is exceptional the fact that every asserted claim of the '574, '084, '694, and '409 patents was invalidated. But both the Supreme Court and the Federal Circuit have cautioned that "fee awards are not to be used 'as a penalty for failure to win a patent infringement suit.'" *Checkpoint Sys.*, 858 F.3d at 1376 (quoting *Octane Fitness*, 134 S. Ct. at 1753). IV's duly issued patents were presumed valid. *See* 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). IV had "the right to vigorously enforce its presumptively valid patent[s]." *Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, 581 Fed. Appx. 877, 881 (Fed. Cir. 2014). The invalidation of the patents does not by itself make this case exceptional. *See Wegmans*, 126 F. Supp. 3d at 685 (holding that the invalidation of a patent does not necessarily warrant an "exceptional case" finding) (quoting *DietGoal Innovations LLC v. Chipotle Mexican Grill*, Inc., No. 12–00764, 2015 WL 1284826, at *1 (E.D. Tex. March 20, 2015)).

## 2. The Invalidity of the '694, '084, and '409 Patents

Commerce contends that IV should have known that the '694, '084, and '409 Patents were invalid in light of *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013), which was affirmed by the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l* ("Alice Corp."), 134 S.Ct. 2347, 2360 (2014) ("*Alice*"). *Alice* held that claims that amount to "nothing significantly more than an instruction to apply [an] abstract idea . . . using some unspecified, generic computer" are not patent-eligible under 35 U.S.C. § 101. Commerce concedes that the Supreme Court had not decided *Alice* in June 2013, when IV filed this action. Nonetheless, Commerce insists that IV should have known when it filed this action that its patents were invalid because the Federal Circuit had already issued the decision affirmed in *Alice*.

Courts considering fee motions in cases involving patents invalidated under Section 101 in light of *Alice* frequently observe that the law in this area was in flux, even after *Alice*. *See Gametek*, 2014 WL 4351414 at *3 (noting that "the substantive law in this area was unsettled at the time" and that the Supreme Court's decision in *Alice* "provided additional clarity regarding computer system applications, an issue upon which the Federal Circuit, sitting *en banc*, had failed to provide a majority opinion"); *YYZ, LLC v. Pegasystems, Inc.*, No. 13-581, 2016 WL 1761955, at *1 (D. Del. May 2, 2016) ("[T]he § 101 analysis is an evolving state of the law and a difficult exercise, which does not lend itself to, e.g., shifting fees pursuant to 35 U.S.C. § 285 . . . ."); *Papst Licensing Gmbh & Co. KG v. Xilinx Inc.*, No. 16-925, 2016 WL 4398376, at *3 (N.D. Cal. Aug. 18, 2016) ("Because this is a complex and developing area of the law, although the Court found [plaintiff]'s arguments unpersuasive, [plaintiff]'s position was not so baseless as to make this case exceptional."); *Credit Card Fraud Control Corp. v. Maxmind, Inc.*, No. 14-3262, 2016 WL 3355163, at *2 (N.D. Tex. Apr. 7, 2016) ("The substantive law of Section 101 patent-eligibility has evolved since Plaintiff initiated this lawsuit. Claims that have

now been established to be unpatentable were not unquestionably so when this case was filed in early September, 2014, less than three months after the Supreme Court's decision in *Alice . . . .*"); *cf. Source Search Techs., LLC v. Kayak Software Corp.*, No. 11-3388, 2016 WL 1259961, at *7 (D.N.J. Mar. 31, 2016), *appeal dismissed* (June 8, 2016), *reconsideration denied*, No. 11-3388, 2016 WL 7374533 (D.N.J. Dec. 19, 2016) (changing positions after *Alice* was decided in an attempt to preserve the validity of the patent was "unreasonable conduct").

Because the legal landscape surrounding Section 101 was evolving during the pendency of this action, the Court cannot conclude that IV's "positions on its patent were at the time objectively unreasonable, or that [its] infringement theory was objectively baseless," such that its reliance on the presumption of validity of its patents was unreasonable. *Wegmans*, 126 F. Supp. 3d at 685; *see also, e.g., Intellectual Ventures I LLC v. Ricoh Americas Corp.*, 170 F. Supp. 3d 673, 681 and n.13 (D. Del. 2016) ("Given the evolving state of the law, the § 101 analysis should be, and is, a difficult exercise. And, therefore, not an exercise that lends itself to, e.g., shifting fees pursuant to 35 U.S.C. § 285."); *YYZ*, 2016 WL 1761955, at *2 ("The court is not persuaded that plaintiff's conduct at bar was unreasonable or that the claims were exceptionally meritless, particularly in light of the changing landscape of § 101. Accordingly, the court does not find that this is an exceptional case under 35 U.S.C. § 285.").[3]

### 3. Invalidity of the '574 Patent

Commerce argues that IV should have known that the '574 Patent was unpatentable, as various claims were anticipated by Nada Kapidzic's and Alan Davidson's paper "A Certificate

---

[3] The conclusion that IV's position was reasonable is bolstered by the fact that "IV consistently reassessed the merits of its patents throughout the litigation process and acted with reasonable dispatch" in dismissing or forgoing its claims "once their merits became clear" (*Capital One*, 2015 WL 7283108, at *6), as with the '666 Patent and by declining to appeal the adverse PTAB decision concerning the '574 Patent.

Management System:  Structure, Functions and Protocols."  IV counters that there is no duty to search for prior art before filing litigation.  Further, IV explains that its position was that the Kapidzic paper was not prior art because the ideas conceived therein were that of the inventor of the '574 patent, Sead Muftic, and not those of his graduate students who were listed as authors of the paper.  Further, IV had grounds for asserting that the Kapidzic paper did not invalidate the '574 patents:  the paper did not disclose all elements of the claims at issue and also did not render those claims obvious when combined with other prior art references.  Finally, IV notes that its positions before the PTAB with respect to the '574 Patent were supported by expert testimony.

The Court agrees with Commerce that IV was required—but failed—to present independent evidence corroborating the testimony of Dr. Sead Muftic, the inventor of the '574 Patent, that he conceived all of the concepts in the Kapidzic paper.  *See* Doc. 87-13, at 20-21.  However, in light of IV's arguments that the Kapidzic paper did not disclose all elements of IV's claims and did not render those claims obvious—arguments that the PTAB considered over several pages in its decision—the Court cannot find that IV's position with respect to the '574 Patent was objectively baseless.

### 4.  **Inconsistent Claim-Construction Positions**

Commerce complains that IV has taken inconsistent claim-construction positions with respect to the '409 and '084 Patents.  Commerce argues that IV asked the Court to adopt a broad construction of the terms in its asserted claims in an effort to establish infringement of the patents but then, in an attempt to establish validity of the patents, asked the PTAB to narrowly construe the same terms, despite the fact that the parties and the PTAB are supposed to interpret claim terms in the broadest reasonable way.  IV denies that its position with respect to either of

the patents was inconsistent. On reply, Commerce fails to rebut IV's arguments regarding the consistency of its position regarding the '409 Patent.

With respect to the '087 Patent, however, Commerce maintains that IV's position was inconsistent. Commerce claims that, in the IPR proceeding, IV argued that a prior-art reference did not anticipate the '084 patent because the former disclosed a system that performed network-based intrusion detection by "gathering data reports from various client terminals dispersed throughout the network," while the latter requires the analysis of network data "firsthand." The Court disagrees with Commerce's interpretation of the term "firsthand" in IV's PTAB submission. The Court finds that IV used the term "firsthand" to distinguish the collection of *data* from various inputs, as opposed to the collection of *reports* from various inputs. The term "firsthand" did not mean that the data would be collected from only a "central server," as Commerce argues; rather, it meant that *only* data, and not reports, would be collected.

On the record presented, the Court concludes that IV's positions before the Court were not inconsistent with those adopted before the PTAB.[4]

*       *       *

Because the only factor weighing in favor of finding this case exceptional is IV's failure to conduct some aspects of a pre-suit investigation, Commerce has failed to prove by a preponderance of the evidence that this case is exceptional. Commerce's request for attorney fees pursuant to Section 285 therefore is denied.

---

[4] Even if IV's positions before the Court and the PTAB were inconsistent, they would not necessarily warrant an "exceptional case" finding. *See Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, No. 06-381, 2014 WL 8708239, at *20 (E.D. Tex. Mar. 31, 2014) (holding that "inconsistent statements" before the Court did not suffice to render the case exceptional).

### III.    BILL OF COSTS

Federal Rule of Civil Procedure 54(d) codifies the presumption that a prevailing party is entitled to costs.    The party objecting to the costs bears the burden of overcoming the presumption.  *See Janis v. Biesheuvel*, 428 F.3d 795, 801 (8th Cir. 2005) (holding that the party that did not prevail "is required to overcome the presumption that defendants are entitled to costs").

The Court has broad discretion in awarding costs.  *See Grisso v. Massanari*, 22 Fed. Appx. 656, 658 (8th Cir. 2001) ("[D]istrict courts retain 'substantial discretion' in awarding costs.") (citation omitted).  Nonetheless, the Court may not tax any costs that are not specifically enumerated in 28 U.S.C. § 1920.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-442 (1987).

IV does not dispute that Commerce is the prevailing party.  IV objects only to the taxation of two categories of costs that IV insists were not "necessarily obtained for use in the case":  $325 in costs for the assignment records and $879 in costs for file histories for the patents that were at issue in this case.

### a.  The Assignment Records

Commerce explains that it sought assignment records for the patents in order to determine whether IV properly owned them and had standing to bring this action.  *See* Doc. 100 at 2-3.  However, IV points out—and Commerce does not deny—that Commerce did not assert in its pleadings any defense based on standing.  The question of whether IV properly owned the patents therefore was not an appropriate subject for discovery when, having already answered the complaint in this case, Commerce researched whether IV properly owned the patents.  The documents were not necessary for this case and the cost for procuring them is not taxable.

### b.  **The File Histories**

IV acknowledges that file histories frequently are taxable, but presents two arguments as to why Commerce's costs for the file histories should not be taxed as set forth in the bill of costs. First, the cost is too high, as the applicable rate should be that charged by the patent office, not a rate imposed by the third party vendor Commerce hired.  Second, Commerce did not need to procure the file histories from the third party because IV itself subsequently produced the file histories to Commerce.

IV is correct that courts often tax the cost for obtaining the file histories at the rate set by the patent office.  *See, e.g., Amdocs (Israel) Ltd. v. Opennet Telecom, Inc.*, No. 10-910, 2013 WL 1192947, at *9 (E.D.V.A. March 21, 2013); *Kruse Tech. P'ship v. Daimler AG*, No. 10-1066, 2012 WL 12888668, at *2.  However, in the cases that IV cites, the courts were constrained by local rules concerning the taxation of costs.  The local rules in this district do not limit costs in this fashion.

Commerce states that the third party that provided the file histories charged only $79 more than the patent office would have charged, and that the third party provided the file histories promptly, whereas procuring the documents through the patent office would have taken a minimum of 25 days.  In effect, the third party expedited delivery of the file histories. Ordinarily, delivery expenses are not taxable.  *See, e.g., Hoover v. Bayer Healthcare Pharm. Inc.*, No. 14-05090, 2017 WL 2321146, at *2 (W.D. Mo. Mar. 27, 2017) ("[T]he Court finds that the recovery of delivery costs are not taxable to the nonprevailing party.") (citing *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) ("[The nonprevailing party] should not have been taxed the delivery costs for these depositions.")).

Here, however, Commerce had good reason to try to procure the file histories as quickly as possible.  Commerce was served with process on June 23, 2013, and its attorneys first made

their appearance on June 28, 2013.  Commerce appears to have ordered the file histories on July 24, 2013.  Commerce states that it needed the documents to prepare the answer, which was due on August 30, 2013.  Commerce thus had a relatively short window of time in which to acquire the file histories.  As such, its reliance on a third-party service to procure the documents in an expedited fashion was not unreasonable.  The Court therefore will permit Commerce to recover the full cost of procuring the file history.

IV.    **CONCLUSION**

For the reasons set forth above, Commerce's motion for attorney fees is denied. Commerce may recover costs in the amount of $1,804.49 ($325 less than the amount requested in the proposed bill of costs).

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  September 29, 2017
Jefferson City, Missouri